UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
LG FUNDING, LLC,

        Plaintiff,

- against -

FLORIDA TILT, INC. and RAYMOND
CARTAYA,

        Defendants.
----------------------------------------------------X

**MEMORANDUM & ORDER**

15 CV 631 (PKC) (VMS)

**PAMELA K CHEN, United States District Judge:**

    Plaintiff LG Funding, LLC ("Plaintiff") commenced this action against Defendants Florida Tilt, Inc. ("FTI") and company president Raymond Cartaya ("Cartaya") (together, "Defendants") seeking to recover the unpaid balance on its contract with Defendants. Plaintiff now moves for an entry of default judgment against Cartaya, and for attorneys' fees and costs. For the reasons set forth below, Plaintiff's motion is granted, and the Court finds that Plaintiff is entitled to damages in the amount of $94,550.26. Plaintiff is directed to submit further documentation to allow the Court to determine the amount of pre-judgment interest and attorneys' fees to be awarded. Judgment shall not be issued until after the Court has resolved these outstanding issues.

## BACKGROUND

    Plaintiff brought this suit for debt collection against Defendants on February 9, 2015 asserting breach of contract, accounts stated, and unjust enrichment. (Dkt. 1 ("Complaint" or "Compl.").) Both Defendants were duly served with the Summons and Complaint. (Dkts. 8, 9.) On March 3, 2015, FTI submitted a notice of suggestion of bankruptcy. (Dkt. 6.) The Court

thus stayed the action against FTI in accordance with 11 U.S.C. § 362, and allowed the case to proceed against Cartaya. Cartaya did not file an answer or otherwise respond to Plaintiff's Complaint. On March 20, 2015, the Clerk of the Court certified Cartaya's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Dkt. 12.) On April 29, 2015, Plaintiff moved for default judgment. (Dkt. 13.) Cartaya did not file any opposition.

Plaintiff has alleged the following facts, which the Court accepts as true owing to Cartaya's default. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011) (taking plaintiff's fact submissions as true in default judgment action) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1996)).

Cartaya is the president of FTI, a construction company incorporated and having its principal place of business in Florida. (Compl. ¶¶ 5, 6.) Plaintiff, a financing company, entered into a Merchant Agreement with Defendants on June 2, 2014, under which Plaintiff agreed to advance cash to FTI. (*Id.* ¶ 8; *see* Dkt. 13−3 ("Merchant Agreement" or "Agr.").) In return, FTI agreed to pay Plaintiff a fixed, greater value over time via FTI's account receivables from customers. (Agr. at 1.) Plaintiff accordingly paid $70,690.00 to FTI in exchange for $96,845.30 of FTI's future account receivables, contract rights, and any other obligation arising from the payment of funds from FTI's customers to FTI. (Compl. ¶¶ 9, 11; Agr. at 1.) The Merchant Agreement further provided that Cartaya would guarantee any and all amounts owed to Plaintiff by FTI. (Compl. ¶ 10.)

Pursuant to the Merchant Agreement, Defendants authorized Plaintiff to withdraw 10% of FTI's account receivables daily from of FTI's bank accounts, until Plaintiff's $96,845.30 was fully paid. (Compl. ¶ 12.) Defendants paid Plaintiff a little over $6,000.00 under this arrangement before defaulting on their obligations by failing to direct its customers' payments to

Plaintiff, blocking Plaintiff's access to the authorized bank account, and depositing its receivables into a bank account other than the specified account. (Compl. ¶ 13−15; Agr. at 5.) Defendants continue to owe Plaintiff $90,842.61. (Compl. ¶¶ 13, 15.)

In addition, the Merchant Agreement provides that FTI is responsible for paying certain fees. (*See* Agr. at 11.) This includes a $2,500.00 fee for blocking Plaintiff's access to the account, and another $195.00 fee for Plaintiff's filing a financing statement for the Merchant Agreement pursuant to Article 9 of the Uniform Commercial Code ("UCC"). (Compl. ¶ 18.) Defendants have paid neither fee. (*Id.*)

## DISCUSSION

### I. Default Judgement

#### A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for entry of a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on a plaintiff's motion. Fed. R. Civ. P. 55(b)(2).

A plaintiff is not entitled to default judgment as a matter of right, merely because a party has failed to appear or respond. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993). To determine whether the default judgment should issue, the Court examines whether "the factual allegations, accepted as true, provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y.

2010) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id.* (citation omitted).

### B. Breach of Contract

Plaintiff's claims must be evaluated under New York law, pursuant to the contractual choice-of-law clause in the Merchant Agreement. (Agr. at 6.) *See also Bank of New York v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014) ("New York choice-of-law rules also 'require the court to honor the parties' choice-of-law provision insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated.'" (quoting *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir.1987) (internal alterations omitted)). To make out a claim for breach of contract in New York, a plaintiff must satisfy four elements: (1) the existence of a valid contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of that contract, and (4) actual damages resulting from the breach. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted); *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).

Plaintiff has sufficiently alleged facts demonstrating the existence of a valid contract and that Plaintiff fully performed its obligation to advance cash. (Compl. ¶¶ 9−12, Dkt. 13−3 at 1.)[1]

---

[1] The Merchant Agreement described a sale of payment intangibles. (*See* Agr. at 1); *see also* N.Y. U.C.C. § 9-101(a)(3); U.C.C. § 9-102 cmt. 5d ("The sale of a payment intangible is subject to this Article . . . [and] embraces only those general intangibles 'under which the account debtor's *principal* obligation is a monetary obligation.'"). Such a sale is automatically perfected by attachment, which gives the new owner of the intangibles priority to receive payment over other creditors. *See* U.C.C. §§ 9-309, 9-317(1)−(3). Plaintiff has sufficiently alleged facts that the sale attached and became enforceable when Defendants signed the Merchant Agreement and Plaintiff tendered the initial money to Defendants. (Compl. ¶ 11; Agr. at 1, 7, 9); *see* U.C.C. § 9-203 ("A sale has attached when (1) value has been given; (2) the debtor has rights in the

Defendants only paid a small amount of what was due under the contract before defaulting. (Compl. ¶ 13.) Defendants further violated the terms of the Merchant Agreement by blocking Plaintiff's access to the account to which the receivables should have been sent, and by depositing the receivables in another account entirely. (*Id.* ¶¶ 14−15.) Since Defendants breached the contract and left over $90,000 as unpaid damages, Plaintiff is entitled to terminate the Agreement and receive judgment for the full remainder of the contract price. Plaintiff is additionally entitled to a UCC filing fee and a fee for having access to its account blocked, pursuant to the fee structure found in the Merchant Agreement. (Agr. at 11.) Plaintiff has thus been damaged in the amount of $93,537.61. [2]

Under New York Law, Plaintiff is also entitled to pre-judgment interest on the damages from the time of the breach, at a rate of 9% per annum. *See* N.Y. C.P.L.R. §§ 5001, 5004; *see, e.g.*, *Harkabi v. SanDisk Corp.*, 891 F. Supp. 2d 527, 546 (S.D.NY. 2012) (New York law requires breach of contract damages to include pre-judgment interest at the statutorily prescribed rate). Pre-judgment interest must be computed from either the date of breach or, if multiple occasions of Defendants' breach make impossible the determination of a single date, a reasonable intermediate date decided by the court. *See* N.Y. C.P.L.R. § 5001 ("Interest shall be computed from the earliest ascertainable date the cause of action existed . . . . Where such damages were incurred at various times, interest shall be computed upon each item . . . or upon all of the damages from a single reasonable intermediate date."); *see also Israel v. Benefit*

---

collateral . . . ; and (3) one of the following conditions is met: (A) the debtor has authenticated a security agreement that provides a description of the collateral . . . . "). Both New York statutory law and the terms of the Merchant Agreement thus protect Plaintiff's right to timely payment.

[2] Because Plaintiff's damages are covered by its breach of contract claim, the Court will not address Plaintiff's alternative claims.

*Concepts N.Y., Inc.*, 9 Fed. App'x. 43, 43 (2d Cir. 2001) (holding that New York law prevents windfall to Plaintiff by computing interest from a reasonable intermediate date when breach occurs over a period of time); *Santillan*, 822 F. Supp. 2d at 298 (asserting that district courts have broad discretion under New York law to determine from what date to compute pre-judgment interest).

Here, the amount of pre-judgment interest cannot be determined at this time because both Plaintiff's Complaint and Motion for Entry of Judgment fail to indicate any dates regarding Defendants' breach, such as when Defendants ceased directing customers' payments to Plaintiff, blocked Plaintiff's access to the authorized bank account, or deposited accounts receivables into another bank account. Plaintiff is accordingly directed to submit all such relevant information for the computation of pre-judgment interest.

### C. Cartaya's Personal Liability

Plaintiff asserts its claim for breach of contract against Cartaya under a theory that Cartaya personally guaranteed FTI's debts to Plaintiff. For Cartaya to be financially responsible for FTI's contractual obligations under New York law, Plaintiff must show "an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 672 F. Supp. 2d 409, 417 (S.D.N.Y. 2009) (quoting *Kensington House Co. v. Oram*, 739 N.Y.S.2d 572, 572 (N.Y. App. Div. 2002). So long as the guaranty signed is unambiguous, there is no barrier under New York law to personal liability for corporate debt. *Citibank, N.A. v. Uri Schwartz & Sons Diamonds, Ltd.*, 948 N.Y.S.2d 275, 278−79 (N.Y. App. Div. 2012) (citing *National Westminster Bank USA v. Sardi's Inc.*, 571 N.Y.S.2d 712, 713 (N.Y. App. Div. 1991); *see also M & T Bank v. HR Staffing Solutions, Inc.*, 964 N.Y.S.2d 847, 848 (N.Y. App. Div 2013) (repeating the long-held rule that

one is bound to act when one signs on to obligations in a writing). *Cf. GMS Batching, Inc. v. TADCO Constr. Co.*, 992 N.Y.S.2d 264, 267 (N.Y. App. Div. 2014) (holding that a corporate officer is not personally liable for the debts of the company without a manifest intent to be personally bound by any signed agreement, which must be strictly construed).

Plaintiff has sufficiently alleged facts that constitute a breach of personal guaranty. In the Merchant Agreement, Cartaya signed a guaranty that he would be fully liable for any damages incurred by FTI's breach of the Merchant Agreement. (Agr. at 8−9.) Along with FTI, Cartaya has not paid the debt owed by FTI and thus has breached that guaranty. (Compl. ¶ 15.) Accordingly, Cartaya is liable for $93,537.61 in damages to Plaintiff, plus pre-judgment interest.

## II. <u>Attorneys' Fees and Costs</u>

### A. Legal Standard

Plaintiff additionally moves for an award of attorneys' fees and costs. "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action on the contract is enforceable 'if the contractual language is sufficiently clear.'" *Cnty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs., LP*, 636 F. Supp. 2d 159, 179 (N.D.N.Y. 2009) (citing *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)). The Merchant Agreement provides that Plaintiff is entitled to "all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of LG's remedies . . . including but not limited to court costs and attorney's fees." (Agr. at 11.)

### B. Costs

Plaintiff is entitled to recover its reasonable costs related to Defendants' breach. Plaintiff paid $400.00 in filing this case with the Court and $612.65 in serving Defendants with process.

7

(Dkt. 13−1 ¶ 10). Pursuant to the Merchant Agreement, Cartaya must reimburse Plaintiff $1,012.65 in costs. (*Id.*; Agr. at 5.) [3]

### C. Attorneys' Fees

Plaintiff is also entitled to reasonable attorneys' fees. In the Second Circuit, a "presumptively reasonable fee" must be calculated using the "lodestar," *i.e.*, multiplication of a reasonable hourly rate by the reasonable number of hours required by the case. *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014); *Millea v. Metro–N.R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept.21, 2005) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 267 (S.D.N.Y. 1995)); *see Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992). Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (internal quotation marks omitted). A district court should "bear in mind all of the case-specific variables that [the court] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). "[A] presumptively reasonable [attorneys'] fee "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum

---

[3] Although New York law requires fee-shifting provisions to be "strictly construed," there is nothing in the language of the Merchant Agreement to suggest that Defendants are not bound to pay costs, or that the provision is otherwise unenforceable. *See 214 Wall St. Assocs., LLC v. Med. Arts-Huntington Realty*, 953 N.Y.S.2d 124, 126 (N.Y. App. Div. 2012) (quoting *Gottlieb v. Such*, 740 N.Y.S.2d 44, 45 (N.Y. App. Div. 2002)).

necessary to litigate the case effectively.'" *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*, 522 F.3d at 112, 118).

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours, and the dates. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983). The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances. *Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010). If a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours in calculating a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *accord Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 n.6 (2d Cir. 1999).

Plaintiff's counsel has not provided documentation of hours worked on this case. Rather, Plaintiff's counsel requests that it be awarded a 20% contingency fee, pointing to decisions from courts in this Circuit granting contingency fee awards using a similar percentage method. (Dkt. 13−1 ¶ 8 (citing *United States v. Vilus*, 419 F. Supp. 2d 293, 301 (E.D.N.Y. 2005) and *3H Enters. v. Murray*, 994 F. Supp. 403, 405 (N.D.N.Y. 1998)).) But even in cases where a court awarded attorneys' fees based on a percentage of the total award, the court calculated the lodestar to confirm the reasonableness of the award. *See Vilus*, 419 F. Supp. 2d at 300−01 ("Deciding between *the amount based on a lodestar*, and the 20% amount, [the Court] conclude[s] that the imposition of attorneys' fees in the amount of 20% . . . is not unreasonable." (emphasis added)); *3H Enters.*, 994 F. Supp. at 405 (holding that a 1/3 contingency fee arrangement was reasonable, but only after calculating a lodestar of a comparable, if lesser, amount).

9

While a contingency award of 20% of the damages may well result in a reasonable fee (*see* Dkt. 13−1 ¶ 9 (representing that a 33% contingency fee arrangement is common among New York City debt collection attorneys)), the Court declines to award a percentage award in the absence of contemporaneous time records. Plaintiff is directed to file contemporaneous time records to permit the Court to assess the reasonableness of Plaintiff's attorneys' fees request.

## CONCLUSION

Accordingly, the Court grants Plaintiff's motion for default judgment and for attorneys' fees and costs. Additional documentation is required, however, regarding the amount of pre-judgment interest and attorneys' fees to be awarded to Plaintiff. Plaintiff is directed to file the documentation described in the foregoing by July 29, 2015. Though the Court finds that a damage award in the amount of $93,537.61 should be awarded against Cartaya for breach of contract and that Plaintiff is also entitled $1,012.65 for costs, no judgment shall be issued until the Court has resolved the outstanding attorneys' fees and pre-judgment interest issues.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: July 15, 2015
Brooklyn, New York